343 Mich. 101 (1955)
72 N.W.2d 1
In re CLAYTON ESTATE.
DETROIT TRUST COMPANY
v.
DEPARTMENT OF REVENUE.
Docket No. 31, Calendar No. 46,445.
Supreme Court of Michigan.
Decided October 3, 1955.
Moll, Desenberg, Purdy & Glover (Harold B. Desenberg, of counsel), for plaintiff.
*103 Thomas M. Kavanagh, Attorney General, Edmund E. Shepherd, Solicitor General, T. Carl Holbrook and William D. Dexter, Assistants Attorney General, for defendant.
KELLY, J.
Appellant herein contends that the $3,122,928.18 Federal estate taxes assessed in the Frederick G. Clayton estate should be deducted from the gross estate of $8,374,437.41 in determining the Michigan inheritance tax to be assessed and paid by the residuary legatees and devisees.
The main question presented involves the construction of sections 3 and 11 of the Michigan inheritance tax act.[*] Section 3 reads in part:
"All taxes imposed by this act shall accrue and be due and payable at the time of transfer, which is the date of death."
Section 11 states that the appraiser shall "fix the clear market value at the time of the transfer thereof of property which shall be subject to the payment of any tax imposed by this act."
Appellant contends it was the legislative intent that the tax be imposed upon what was actually transferred and received by the beneficiary. Appellee insists that when the legislature used the word "transfer" it meant that the act of transferring property from the dead to the living should be taxed and, therefore, the "transfer" should be determined as of the date of death in accordance with the value of the property that passed from decedent.
The question presented was decided in In re Fish's Estate, 219 Mich 369, where this Court said (pp 377, 378):
"It will, therefore, be seen, although the language quoted is found in different sections and the arrangement *104 of it might be improved, that the State by this act has levied an inheritance tax upon the clear market value of the property at the time of death and that it is then due and payable. The tax is measured not by the value of the right, but by the value of the property transferred; not by what it is worth when it reaches the possession of the beneficiary, but by the clear market value at the instant of death; not what it will net him after deducting expenses and lawyers' fees, but by its clear market value at the date of transfer."
Appellant stresses the point that the probate code has been amended and changed since the decision in the Fish Case and that consideration of the present probate code and of the inheritance tax act calls for a reversal of the decision in the Fish Case, supra.
A new probate code was adopted in 1939[**] changing the order of priority, and adding 2 new charges, namely: "estate and inheritance taxes" and "allowances, if any, for children under the age of 16 years of a deceased man." Thus, the statute[] provides for the priority of payment as follows:
 1.  Expenses of administration;
 2.  Widow's priority share;
 3.  Family allowance to widow and children;
 4.  Estate and inheritance taxes;
 5.  Claims allowed against the estate; and
 6.  Allowance for children under the age of 16 years.
The statute further provides that after payment of the above-enumerated charges the residue should be assigned to the persons entitled thereto.
There is no reference in the 1939 probate code to the Michigan inheritance tax act. The fact that *105 the legislature insured the payment of estate and inheritance taxes before the residue should be paid does not affect the question presented here, nor the decision in the Fish Case, supra.
A similar argument concerning statutes of descent and distribution was made in In re Cress' Estate, 335 Mich 551 (36 ALR2d 907), wherein it was urged that the Dodge act (CL 1948, § 702.45 [Stat Ann 1943 Rev § 27.3178(115)]), providing for settlements in will contest cases, modified the inheritance tax act. This Court rejected that theory, stating (p 565):
"In the case at bar, the tax is computed by reason of transfer of property by will. The compromise agreement does not change the fact that the entire property in the estate passes by reason of the will, and at the time of the death of testator. The right of the State becomes fixed at the moment of death, although the value of the taxable interest is fixed at a later date, nor does the so-called Dodge act, CL 1948, § 702.45 (Stat Ann 1943 Rev § 27.3178[115]), encouraging the settlement of will contests and other contests over the distribution of a decedent's estate change or modify our inheritance tax laws."
Appellant states:
"It should be noted however, that the cited case (In re Fish's Estate, 219 Mich 369) was decided prior to the adoption of the present probate code and that it is in direct conflict with the principle which was controlling in Moorman v. Moorman (1954), 340 Mich 636."
We cannot agree with appellant's conclusion that the holding in Moorman v. Moorman, 340 Mich 636, is in direct conflict with the Fish Case, supra. The Moorman Case did not involve an interpretation of the inheritance tax act. In 1948 congress provided for the "marital deduction," thereby adding to the *106 then existing exemptions and deductions and providing for marital deductions in the tax up to 50% of the gross amount of the estate. The Moorman decision required an interpretation of the Michigan statutes of descent as to intestate property and presented to this Court for the first time the question: Should the Federal estate tax be deducted from the gross estate before plaintiff's share, as widow, was determined? That case held that the distributive shares transferable to the heirs of an intestate are computed after deduction of the Federal estate tax.
The following from the Moorman decision (p 643) is worthy of note:
"Plaintiff shares in the interstate estate of her deceased husband solely by virtue of the statute. The Michigan legislature could have provided that the widow should not be called upon to share any part of the Federal estate tax, as was done by approximately 1/2 of the legislatures of the other States. Although the Michigan legislature has convened in 5 regular sessions since congress amended the estate tax in 1948, no such action has been taken."
The Michigan legislature has convened in 19 regular sessions since this Court's decision In re Fish's Estate, supra, in 1922. No legislative action has been taken regarding that decision. Contrast this with the fact that the 1954 decision in the Moorman Case, supra, was followed by legislative action in the 1955 regular session of the legislature.[***]
It is not within the province of this Court to pass judgment upon the question as to how the inheritance tax should be assessed or collected. Our duty is to determine legislative intent as expressed in the inheritance tax act.
The silence of the legislature since 1922 to this Court's interpretation of its intent as expressed in *107 the Fish Case, supra, can only be construed as consent to the accuracy of that interpretation. This principle is enunciated in 21 CJS, Courts, § 214, pp 388, 390:
"The doctrine of stare decisis applies with full force to decisions construing statutes or ordinances.
"This rule is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use or failure to change the language of the statute so construed, the power to change the law as interpreted being regarded, in such circumstances, as one to be exercised solely by the legislature."
This principle has been approved by the supreme courts of various States. In Opperman's Estate (No. 2), 319 Pa 466, 468 (179 A 735), the court said:
"In Dupuy v. Johns, 261 Pa 40 (104 A 565), the present question arose. * * * The legislatures from 1918, when Dupuy v. Johns, supra, was decided, until now, have not chosen to change the law as announced in that and subsequent decisions, and hence the construction of the statute by this court must stand until the legislature declares otherwise: Bickley's Estate, 270 Pa 101, 106-107 (113 A 68); Lerch's Estate, 309 Pa 23, 28 (159 A 868)."
In Milwaukee County v. City of Milwaukee, 210 Wis 336 (246 NW 447), a headnote reads:
"The validity of the practice and proposed practice of a county treasurer of commencing the sale of lands for delinquent taxes under sec. 74.39, Stats., on the second Tuesday of June, as directed thereby and by sec. 74.33, but selling only one tract daily and continuing the sale from day to day until February 1 following, then selling daily as many tracts as practicable, is upheld as sanctioned by such *108 statute as construed in 1874 and not since modified or limited by the court, the legislature by not thereafter materially amending it being deemed to have accepted it with such construction incorporated therein."
And, in Board of Medical Examiners of Utah v. Blair, 57 Utah 516 (196 P 221), it was held:
"Where the legislature has twice met and is in session a third time since a decision of the supreme court * * * and no amendment of the statute has been made, it must be concluded that the law as so construed has the approval of the people, and, unless clearly prohibited by the Constitution or unreasonable or discriminatory, it must be enforced." (Syllabus.)
$25,977.69 was paid to the Canadian government as Canadian succession duties because decedent owned stocks in a corporation domiciled in Canada. Appellant contends this amount is deductible in computing the Michigan inheritance tax. While the issue of succession taxes paid to a foreign government was not before this Court in the Fish Case, supra, we commented (pp 376, 377):
"Thus it will be seen that in 5 of the States holding that the deduction (Federal estate tax) should be made, either by legislative enactment or by decision of the courts of last resort, the policy of allowing deductions for sums paid to other sovereignties had been adopted prior to the enactment of the Federal estate tax. Not so with this State. Neither by express legislative enactment, decision of the Court of last resort, or by departmental action had this State countenanced such policy."
Appellant cites the case of Frick v. Pennsylvania, 268 US 473 (45 S Ct 603, 69 L ed 1058, 42 ALR 316). Subsequent to the Frick Case, supra, the United States supreme court in Curry v. McCanless, *109 307 US 357, 368 (59 S Ct 900, 83 L ed 1339, 123 ALR 162), stated:
"Shares of corporate stock may be taxed at the domicile of the shareholder and also at that of the corporation which the taxing State has created and controls. * * * But taxation of a corporation by a State where it does business, measured by the value of the intangibles used in its business there, does not preclude the State of incorporation from imposing a tax measured by all its intangibles."
We believe the Curry decision to be controlling, and, therefore, the trial court was not in error in deciding that the amount paid to the Dominion of Canada as succession taxes was not deductible in determining the Michigan inheritance tax.
The employees of F.G. Clayton Company filed claims in excess of $2,000,000, based upon breach of an alleged contract to provide certain benefits by will. Pursuant to order of the probate court these claims were settled for $250,000. The probate court allowed this amount as a deduction in computing the inheritance tax. The circuit court denied such deduction, relying upon In re Cress' Estate, supra, wherein it was held:
"An inheritance tax is to be computed by reason of transfer of property by will unaffected by subsequent compromise of contest of such will as the property of the estate passes by reason of the will and at the time of the death of the testator (CL 1948, § 205.201 et seq.; § 702.45)." (Syllabus.)
In the above-cited cases decedents' wills were under attack. Such was not the case in the claims of the Clayton employees. Had the employees' claims been prosecuted to a successful conclusion they would have constituted a claim on a parity with all other claims of creditors of the decedent. *110 The fact that the claims were settled did not change the character or nature of the claims. The inheritance tax act recognizes that "debts * * * constitute proper deductions in reaching a taxable remainder under provisions of this act." (CL 1948, § 205.213 [Stat Ann 1950 Rev § 7.574].) The claims of the employees should have been deducted in computing the inheritance tax.
This case is remanded to the circuit court with instructions to delete subparagraph (e) in the judgment and order filed November 16, 1954, and in lieu thereof to insert the following: "The payments made upon the claims of employees of the Frederick G. Clayton Company against the decedent's estate are deductible in determining the value of the shares of said estate devised and bequeathed to the respective legatees and devisees for the purpose of determining the Michigan inheritance tax upon the said shares."
The remainder of the judgment and order is affirmed. No costs, neither party having fully prevailed.
CARR, C.J., and BUTZEL, SMITH, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.
NOTES
[*] PA 1899, No 188, §§ 3 and 11 (CL 1918, §§ 205.203, 205.211 [Stat Ann 1950 Rev §§ 7.564, 7.572]).
[**] PA 1939, No 288 (CL 1948, § 701.1 et seq. [Stat Ann 1943 Rev and Stat Ann 1953 Cum Supp § 27.3178(1) et seq.]).
[] CL 1948, § 702.95 (Stat Ann 1943 Rev § 27.3178 [165]). This section is included in the amendments made by PA 1955, No 101, hereinafter mentioned.  REPORTER.
[***] PA 1955, No 101.  REPORTER.